UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS BONTRAGER, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>SHOWMARK MEDIA LLC, a Delaware limited liability company, and DOES 1 THROUGH 100,<br><br>　　　　　　　Defendants. | ) CASE NO. CV 14-01144 MMM (Ex)<br>)<br>) ORDER GRANTING DEFENDANT'S<br>) MOTION TO DISMISS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

　　　　On January 8, 2014 Nicholas Bontrager filed this putative class action against Showmark Media, LLC ("Showmark") and certain fictitious defendants in Los Angeles Superior Court.[1] Showmark was served on January 14, 2014 and timely removed the case on February 13, 2014,[2] invoking the court's jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[3] On March 20, 2014, the court entered an order on the parties' stipulation to allow

---

[1] Notice of Removal ("Removal"), Docket No. 1 (Feb. 13, 2014), Exh. A ("Complaint").

[2] Removal, ¶ 3.

[3] *Id.*, ¶ 4.

Bontrager to file a first amended complaint.[4]  Bontrager filed an amended complaint on March 21, 2014, alleging claims for violation of California's Commercial Email Law ("CEL"), California Business & Professions Code § 17529.2(b) and 17529.5(a)(3), California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, California's False Advertising Law ("FAL"), California Business & Professions Code § 17500, and California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*, as well as a claim for negligent misrepresentation.[5]  On April 7, 2014, Showmark filed a motion to dismiss the first amended complaint.[6]  Bontrager opposes the motion, although in his opposition, he withdraws the first cause of action to the extent it is based on a violation of § 17529.2(b).  He also withdraws his CLRA claim.[7]  The court therefore grants Showmark's motion to the extent it seeks dismissal of these claims and dismisses Bontrager's claims under § 17529.2(b) and the CLRA with prejudice.[8]

---

[4] Order Granting Stipulation for Leave to Amend, Docket No. 13 (Mar. 20, 2014).

[5] First Amended Complaint ("FAC"), Docket No. 14 (Mar. 21, 2014).

[6] Motion to Dismiss ("Motion"), Docket No. 19 (Apr. 7, 2014).

[7] Opposition to Motion to Dismiss ("Opposition"), Docket No. 25 (May 19, 2014), at 8, 13.

[8] The dismissal of these and other claims with prejudice does not affect the rights of putative class members to bring a claim under these same statutes in the future. See, e.g., *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1013 n. 1 (9th Cir. 2000) ("When a motion is maintained against an uncertified class, only the named plaintiffs are affected by the ruling. There is no res judicata effect as to unnamed members of the purported class"); *Antoninetti v. Chipotle Mexican Grill, Inc.*, Civil Nos. 05CV1660-J (WMc), 06CV2671-J (Wmc), 2007 WL 2669531, *3 (S.D. Cal. Sept. 7, 2007) ("A court's order does not bind members of a putative class if no class action has been certified"); *Broida v. Sirius XM Radio, Inc.*, No. 11cv1219–LAB (RBB), 2011 WL 6013588, *3 (S.D. Cal. Dec. 1, 2011) (granting motion to dismiss and stating "[w]hile this dismissal is with prejudice as to Broida, it is without prejudice, of course, to some other plaintiff with standing to bring a § 349 claim doing so, either individually or as a putative class action").

## I. FACTUAL BACKGROUND

Bontrager alleges that on July 8, 2013 at 2:42 a.m., he received an unsolicited commercial email advertisement from Showmark at his California work email address, Nbontrager@attorneysforconsumers.com.[9] The subject of the email was "Lawyer Media, Top Lawyers in California."[10] The body stated:

> "Mr. Nicholas Bontrager, Your Top Lawyers In California Recognition Preview is now available. As Published In: Lawyer Media, June 2013: To order Click Here to view your custom web page or enter https://www.showmark.com/products.php?pc=9Y4RZZOW in your browser. Your Preview Code is: 9Y4RZZOW[.] The plaque is $159 plus S/H. . . .
> Your Professional Distinction is worthy of the premier recognition product in the marketplace. Let us turn your distinction into an impressive and elegant work of art, a beautiful addition to adorn your office, lobby or conference room."[11]

Bontrager alleges that prior to July 8, 2013, he had never emailed Showmark or opted into one of its email listservs.[12]

Bontrager asserts that when he read the email, he believed it was an announcement of an award or recognition he had received "from a respected legal association or organization."[13] He contends he believed if he paid Showmark $159, he would receive a plaque memorializing the award.[14] Bontrager purportedly attempted to contact Showmark about the source of the "Top

---

[9]FAC, ¶ 11.

[10]*Id.*

[11]*Id.*, ¶ 11, Exh. 1 (July 8, 2013 email from Showmark to Bontrager).

[12]*Id.*, ¶ 15.

[13]*Id.*, ¶ 16.

[14]*Id.*

3

Lawyers in California" award, but did not receive a response.[15] He pleads, on information and belief, that he has never received an award for being a "Top Lawyer in California," and that, after conducting research and investigation concerning the source of the award, he discovered no organization exists that gives such an award.[16] Bontrager asserts that as a result of Showmark's actions, he suffered loss of time, loss of bandwidth, and loss of email storage space.[17]

Bontrager contends that Showmark sends spam emails to recipients who have not consented to receive them, and that many of the emails include false misrepresentations, including the statement that the email recipient has received an award.[18] He alleges that Showmark knows the emails are likely to mislead recipients.[19] He sues on behalf of a putative class consisting of "[a]ll California residents who received unsolicited commercial emails from Showmark, with false or misrepresented information contained in or accompanying the email headers, misleading subject lines, misleading email body, and/or misleading attachments in the emails within one year prior to the filing of this [a]ction."[20]

## II. DISCUSSION

### A. Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual

---

[15]*Id.*, ¶ 11.

[16]*Id.*, ¶¶ 13, 17.

[17]*Id.*, ¶ 18.

[18]*Id.*, ¶ 3.

[19]*Id.*, ¶ 34.

[20]*Id.*, ¶ 18.

4

allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Thus, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

### B. Whether Bontrager's § 17529.5(a)(3) Claim Must be Dismissed

As noted, Bontrager's first claim alleges a violation of Business & Professions Code § 17529.5(a)(3). Section 17529.5(a)(3) makes it

> "unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address [if] . . . [t]he e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." CAL. BUS. & PROF. CODE § 17529.5(a)(3).

Showmark contends that this aspect of Bontrager's first cause of action must be dismissed

because the subject line of the email it sent – "Lawyer Media, Top Lawyers in California" – was not, as a matter of law, misleading. This is so, it asserts, because the subject line would not mislead a reasonable person concerning any material fact contained in the body of the email or the subject of the email. Specifically, Showmark asserts that the subject line does not mention a Top Lawyer's award, or suggest Bontrager has won one.[21] It maintains that Bontrager actually argues that the body of the email was misleading. Showmark contends such an argument is not cognizable under § 17529.5(a)(3), which prohibits only misleading subject lines.

Bontrager counters that whether a subject line is likely to mislead is a question of fact that cannot be resolved on a motion to dismiss.[22] He also contends that to determine whether a subject line is misleading, the trier of fact must examine the body of the email; because the body of the email in this case was purportedly misleading in that it stated that he had won an award for being a top lawyer in California,[23] he asserts that, in combination, the subject line and body of the email are misleading.[24]

In determining whether the subject line of an email is misleading, the court must ask "whether a reasonable consumer is likely to be deceived by Defendants' subject headings." *Asis Internet Services v. Subscriberbase Inc.*, No. 09–3503 SC, 2010 WL 1267763, *2 (N.D. Cal. Apr. 1, 2010). In making this determination, "[a] finder of fact may [ ] reasonably consider the body of an email . . . in determining whether misrepresentations in the subject lines were actually material." *Id.* at *5. Bontrager is correct that "whether a statement is 'likely to deceive' a reasonable consumer is 'generally a question of fact.'" *Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal.App.4th 805, 839 (2011). A court may resolve the question on a motion to dismiss, however, if "[n]o reasonable trier of fact could conclude otherwise." *Asis*, 2010 WL 1267763 at *2

---

[21]Motion at 1, 6.

[22]Opposition at 5.

[23]*Id.* at 7.

[24]*Id.*

6

1  (internal citation and quotation omitted).  A defendant seeking dismissal of a claim under
2  § 17529.5(a)(3) "therefore ha[s] the relatively heavy burden of persuading th[e] Court that no
3  reasonable fact finder could conclude that the email subject line[ ] w[as] 'likely to mislead a
4  recipient.'"  *Id*. at *3.

5        The court agrees with Showmark that nothing about the subject line of the email Showmark
6  allegedly sent to Bontrager would be likely to deceive a reasonable consumer about a material fact
7  regarding the contents or subject matter of the message.  As a result, the court can properly
8  determine on a motion to dismiss that the subject line of the email was not likely to deceive.

9        "[S]ection 17529.5(a)(3)[ ] focuses on the subject line [of an email].  It expressly
10      prohibits subject lines that are likely to mislead 'about a material fact regarding the
11      contents or subject matter of the message.'  Section 17529.5(a)(3) does not turn on
12      whether a subject line is true or false, taken in the context of the email as a whole
13      or in light of a hyperlinked page.  It asks a very different question: whether the
14      subject line might in fact lead a reasonable person to expect something materially
15      different than the message's actual content or subject matter."  *Asis*, 2010 WL
16      1267763 at *4.

17        The phrase "Lawyer Media, Top Lawyers in California" indicates that the body of the
18  email will concern top lawyers in California.  This is in fact the subject addressed in the body of
19  the email.  Although the information contained in the body of the email may have been misleading
20  because it suggested that Bontrager had received a fictitious award, the fictitious award was an
21  award for top lawyers in California.  This is exactly the topic identified the subject line.  For that
22  reason, no reasonable trial of fact could conclude that the subject line of the email was misleading.

23        Courts concluding that a defendant violated § 17529.5(a)(3) have generally found that a
24  subject line was misleading because the subject line of the email contained phrases "such as 'how
25  are u,' and 'whassup,' leading recipients to believe that the emails were personal messages, not
26  unsolicited commercial messages with links to an adult dating website" or other businesses,
27  *Tagged, Inc. v. Does 1 through 10*, No. C 09–01713 WHA, 2010 WL 370331, *6-7 (N.D. Cal.
28  Jan. 25, 2010), or where the subject line of the email appeared to offer a product for free but the

7

body of the email required the consumer to take a certain action in order to receive the offered product, see, e.g., *Hypertouch*, 192 Cal.App.4th at 828 ("If a subject line creates the impression that the content of the e-mail will allow the recipient to obtain a free gift by doing one act (such as opening the e-mail or participating in a single survey), and the content of the e-mail reveal[s] that the 'gift' can only be obtained by undertaking more onerous tasks, (such as paying money for the gift or agreeing to partake in other offers), the subject line is misleading about the contents of the e-mail"); *Asis Internet Services v. Member Source Media, LLC* (*Asis II*), No. C–08–1321 EMC, 2010 WL 1610066, *5 (N.D. Cal. Apr. 20, 2010) (holding that a reasonable trier of fact could find that recipients of emails with the subject lines "Wal*Mart 500 Dollar Gift Card Inside," "Second Attempt: $500 Target Gift Card Inside," and "Second Attempt: Victoria's Secret Gift Card Inside" were likely to be deceived where the emails "did not actually contain free gifts or gift cards").

Nothing in the subject line of the email Showmark sent indicated that Bontrager would receive a "Top Lawyer" plaque if he took certain action (e.g., opening the email), while the body of the email required him to take different action to receive it (e.g., paying a fee). Nor did the subject line indicate that the email was from a personal acquaintance, or even from the organization making the fictitious award, rather than a company that manufactures plaques.[25] For these reasons, no reasonable trier of fact could find that the subject line of the email was likely to deceive a reasonable consumer. Bontrager's § 17529.5(a)(3) claim must therefore be dismissed.

---

[25]At the hearing, Bontrager's attorney argued that the subject line of the email was misleading because it did not indicate that the body of the email contained a commercial solicitation. Nothing in the text of § 17529.5(a)(3), however, requires that the subject line of a commercial solicitation affirmatively indicate that it is that type of communication. Rather, the statute prohibits subject lines that mislead the reader about the nature of the email. Thus, in *Tagged*, as noted, the subject line of the email ("wassup") was misleading because the email appeared to be sent by a personal acquaintance rather than a company. Here, by contrast, nothing about the subject line of the email ("Lawyer Media, Top Lawyers in California") suggests that the email is from a personal acquaintance, an organization making an award, or a company selling plaques; the subject line merely identifies the topic of the email. For that reason, the court finds counsel's argument that this case is similar to *Tagged* unpersuasive.

8

Because the email forms the crux of Bontrager's claim and the court has found that as a matter of law it did not violate § 17529.5(a)(3), allowing Bontrager to amend this claim would be futile. The court therefore dismisses the claim with prejudice. See *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment"); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

### C.  Whether Bontrager's UCL and FAL Claims Must be Dismissed

Showmark next argues that Bontrager's UCL and FAL claims must be dismissed. "The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2010 WL 2898284 *16 (N.D. Cal. July 21, 2010) (quoting CAL. BUS. & PROF. CODE § 17200). "'An act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent.'" *Id.* (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1554 (2007)). The law is "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999); see also *Palestini v. Homecomings Fin., LLC*, No. 10CV1049-MMA, 2010 WL 3339459, *9 (S.D. Cal. Aug. 23, 2010) (same).

"While the scope of conduct covered by the UCL is broad, its remedies are limited. A UCL action is equitable in nature; damages cannot be recovered. . . . [U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003) (citing *Cel-Tech Communications*, 20 Cal.4th at 180) (second alteration original); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 173 (2000) ("A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff . . . through unfair or unlawful business practices. It is not an all-purpose substitute for a tort or contract action").

The FAL prohibits the dissemination of false or misleading statements in connection with

advertising. CAL. BUS. & PROF. CODE § 17500.[26] "Section 17500 has been broadly construed to proscribe 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 679 (2006) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002) (internal quotation marks omitted)). In evaluating whether a statement is misleading, the court looks primarily to the words of the statement itself, and compares those words to the actual facts. *Id.*

Like the UCL, the FAL provides for injunctive and restitutionary relief to a plaintiff who has been harmed by a violation of the statute. See *Colgan*, 135 Cal.App.4th at 694, 701 ("The False Advertising Law . . . authorize[s] a trial court to grant restitution to private litigants asserting claims under those statutes. . . . Section 17535 provides in relevant part: 'Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction'"); see also CAL. BUS. & PROF. CODE § 17535 ("Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction").

Showmark contends that Bontrager's UCL and FAL claims must be dismissed because

---

[26]Section 17500 provides: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised." CAL. BUS. & PROF. CODE § 17500.

Bontrager does not have standing to assert them. It argues that the only remedies available under the two statutes are restitution and injunctive relief, and that Bontrager is not entitled to receive either.[27] Showmark asserts that restitution is not available because it has nothing to restore to Bontrager in that it took nothing from him. Bontrager does not allege that he purchased the plaque advertised in the email, for example, nor does he allege that he provided anything else of value to Showmark after receiving the email. With respect to Bontrager's prayer for injunctive relief, Showmark contends that Bontrager lacks standing to seek an injunction because he does not allege injury in fact as a result of his receipt of the email, and because the fact that he now understands the email Showmark allegedly sent him is misleading precludes Bontrager from showing that he is likely to be misled by such an email in the future.[28]

In his opposition, Bontrager abandons his prayer for restitution on the UCL and FAL claims.[29] His prayer for restitution on these two causes of action is therefore dismissed with

---

[27] Motion at 8-9, 14-15.

[28] *Id*. at 14-15. Because the court finds *infra* that Bontrager's UCL and FAL claims must be dismissed for lack of standing since Bontrager has not adequately alleged that he suffered injury in fact as a result of receiving Showmark's email, his claim for injunctive relief necessarily fails, because he cannot allege a likelihood of impending, irreparable harm resulting from similar, injury caused by future Showmark emails. Even were this not the case, as Showmark argues, there is no realistic possibility that Bontrager might rely to his detriment on similar future emails. See, e.g., *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that to have standing to seek injunctive relief, a plaintiff must show "that he is realistically threatened by a repetition" of the injury the injunction would redress); *In re Intel Laptop Battery Litigation*, No. C 09–02889 JW, 2011 WL 7290487, *2 (N.D. Cal. Apr. 7, 2011) ("If a plaintiff has knowledge of a defendant's practices, that plaintiff cannot have standing to seek injunctive relief to redress injuries caused by those practices, because the plaintiff's knowledge preclude him from showing a likelihood of being injured in the future by those practices"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939, 951 (S.D. Cal. 2007) ("In this case, Plaintiff may not have been injured at all by the alleged false advertising. Even if she was, however, it is unclear how prospective relief will redress her injury, since she is now fully aware of the linens' threat count"); see also *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (stating that neither "speculation [n]or 'subjective apprehension' about future harm support standing").

[29] Compare FAC, ¶ 68(g) ("Plaintiff, on behalf of himself and the Class, requests the following relief: . . . Actual damages suffered by Plaintiff and Class Members as applicable or full restitution of all funds acquired from Plaintiff and the Class Members from the sale of

11

prejudice. With respect to his standing to seek injunctive relief, Bontrager argues that he need not plead he was damaged to bring a UCL or FAL claim seeking only an injunction. He also asserts that he has adequately pled an entitlement to injunctive relief because the UCL and the FAL both provide a statutory basis for awarding injunctive relief.[30]

"[A] plaintiff must have suffered an injury in fact and have lost money or property as a result of [the] unfair competition to have standing to pursue either an individual or a representative claim under the California unfair competition law."[31] *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 849 (2008) (citing CAL. BUS. & PROF. CODE § 17204); see also *Plastino v. Wells Fargo Bank*, No. C 12–01037 CRB, 2012 WL 2061515, *6 (N.D. Cal. June 7, 2012); *Jensen v. Quality Loan Service Corp.*, 702 F.Supp.2d 1183, 1199 (E.D. Cal. 2010); *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal.App.4th 659, 677 n. 13 ("Proposition 64's [32] provisions . . . chang[ed] the language of the

---

misbranded services during the relevant class period") with Opposition at 8 ("Plaintiff is not seeking restitution by way of his UCL cause of action and only seeks injunctive relief"); *id.* at 11 ("[S]imilar to . . . Plaintiff's UCL claims, Plaintiff is not seeking restitution by way of his FAL cause of action and only seeks injunctive relief").

[30]Opposition at 9, 12.

[31]Where UCL and FAL claims are premised on allegedly misleading communications, California courts also require evidence of reliance before they will find that causation and "injury in fact" have been proved. See *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009) (holding that a consumer suing a business under the "fraud" prong of the UCL must show actual reliance on an alleged misrepresentation, not merely a factual nexus between the business's conduct and the consumer's injury); *Pfizer Inc. v. Superior Court*, 182 Cal.App.4th 622, 630 (2010) (analyzing the impact of Proposition 64 on UCL claims and noting that a plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate *actual reliance* on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions"). Although not argued by Showmark and therefore not a basis for the dismissal of Bontrager's complaint, it appears unlikely Bontrager could show that he relied on the contents of the email to his detriment, as he did not purchase the plaque Showmark advertised.

[32]On November 2, 2004, California voters passed Proposition 64; it took effect the following day, in accordance with Article II, Section 10 of the California Constitution. *Lyons v. Chinese Hosp. Ass'n*, 136 Cal.App.4th 1331, 1336 n. 2 (2006); see also *R&B Auto Ctr., Inc. v. Farmers Group, Inc.*, 140 Cal.App.4th 327, 359 (2006). Proposition 64 amended the Business

1   [UCL] to read that a person could bring suit only if the person 'has suffered injury in fact and has
2   lost money or property as a result of such unfair competition.' . .''); *Harris*, 138 Cal.App.4th at
3   33 (California Business and Professions Code § 17203 "now requires that relief may be sought
4   only by persons who have themselves suffered injury").

5   The same is true of a plaintiff bringing a claim under the FAL. See CAL. BUS. & PROF.
6   CODE § 17535 ("Any person may pursue representative claims or relief on behalf of others only
7   if the claimant meets the standing requirements of this section. . ."); *id.*, § 17204 ("Actions for
8   any relief pursuant to this chapter shall be prosecuted[,] [*inter alia*,] . . . by any person who has
9   suffered injury in fact and has lost money or property as a result of such unfair competition");
10  *Feitelberg*, 134 Cal.App.4th at 1010 (stating that the Proposition 64 amendments "limit private
11  representative actions to persons who . . . meet the standing requirements set forth in section
12  17204, which include injury in fact").

13  Bontrager cites *White v. Trans Union, LLC*, 462 F.Supp.2d 1079, 1083 (C.D. Cal. 2006),
14  in support of his argument that he need not plead that he was damaged as a result of his receipt
15  of the email to obtain injunctive relief. The *White* court held that a plaintiff need not show that

---

and Professions Code to require that persons suing as "private attorneys general" or on behalf of others show that they had suffered injury as a result of an allegedly unfair business practice. See CAL. BUS. & PROF. CODE § 17535 ("Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of this section. . ."); *id.*, § 17204 ("Actions for any relief pursuant to this chapter shall be prosecuted exclusively . . . by the Attorney General or any district attorney . . . or upon the complaint of any board, officer, person, corporation or association or by *any person who has suffered injury in fact and has lost money or property as a result of such unfair competition*" (emphasis added)); see also *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323 (2011) ("Proposition 64 requires that a plaintiff have 'lost money or property' to have standing to sue. The plain import of this is that a plaintiff now must demonstrate some form of economic injury"); *Paulus*, 139 Cal.App.4th at 677 n. 13 ("Proposition 64's provisions . . . chang[ed] the language of the [UCL] to read that a person could bring suit only if the person 'has suffered injury in fact and has lost money or property as a result of such unfair competition.' . . ."); *Harris v. Investor's Business Daily, Inc.*, 138 Cal.App.4th 28, 33 (2006) (California Business and Professions Code § 17203 "now requires that relief may be sought only by persons who have themselves suffered injury"); *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal.App.4th 997, 1010 (2005) (Proposition 64 amendments "limit private representative actions to persons who . . . meet the standing requirements set forth in section 17204, which include injury in fact").

13

defendant directly took money from him in order to demonstrate that he has standing to sue for injunctive relief under the UCL.[33] See *id.* ("Plaintiffs do not seek monetary relief under the UCL, but rather they seek only injunctive relief on this Claim. Although TransUnion is correct that Plaintiffs would be required to show that TransUnion took money directly from them in order to obtain money damages under the UCL, no such burden exists here, where Plaintiffs seek only injunctive relief"). *White* does not stand for the proposition that a UCL plaintiff need not show he has suffered injury in fact to demonstrate that he has standing to sue for injunctive relief. Rather, it simply recognizes that a plaintiff need not allege that the defendant directly took money from him – i.e., allege recoverable restitution – in order to allege a loss of money or property sufficient to confer standing to sue for a UCL violation. See *Kwikset*, 51 Cal.4th at 890-91 ("As we recently have noted, [ ] the standards for establishing standing under [the UCL] and eligibility for restitution under [the statute] are wholly distinct. For the drafters of Proposition 64, which amended both sections [of the UCL,] to make standing . . . expressly dependent on eligibility for restitution . . . would have been easy enough, but nothing in the text or history of Proposition 64 suggests this was intended"); see also *Finelite, Inc. v. Ledalite Architectural Productions*, No. C–10–1276 MMC, 2010 WL 3385027, *2-3 (N.D. Cal. Aug. 26, 2010) ("As the California Supreme Court has . . . explained . . . 'the right to seek injunctive relief under section 17200 is not dependent on the right to seek restitution; the two are wholly independent remedies,'" quoting *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 790 (2010)); *Fulford v. Logitech, Inc.*, No. C–08–2041 MMC, 2009 WL 1299088, *1 (N.D. Cal. May 8, 2009) ("[W]here a plaintiff has adequately alleged 'loss of income,' 'loss of financial resources,' or 'economic loss,' a number of courts, subsequent to the enactment of the UCL standing requirement at issue herein, have found such plaintiff has standing under the UCL, irrespective of any such plaintiff's inability to seek restitution from the defendant named therein").

Accordingly, the fact that the first amended complaint does not allege that Showmark directly took money from Bontrager, such that he is entitled to restitution if he prevails on his

---

[33]Opposition at 8-9.

14

claims, does not preclude the possibility that Bontrager has standing to sue under the UCL and FAL. So long as he has alleged a cognizable economic injury, the statutes' standing requirements are satisfied. See *Kwikset*, 51 Cal.4th at 324 (noting the "Proposition 64 requirement that injury be economic," and observing that this makes standing under the UCL "substantially narrower than federal standing under article III, section 2 of the United States Constitution, which may be predicated on a broader range of injuries").

> "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset*, 51 Cal.4th at 324.

As noted, Bontrager alleges that because of his receipt of Showmark's email, he lost time, bandwidth, and email storage.[34] None of these categories of harms appears inherently to be a form of economic injury. To the extent they represent economic loss, however, Bontrager does not allege sufficient facts to explain how this is so. He does not plead, for example, that he pays for his email account or the internet service at his work. Nor does he allege that the time it took him to read the email resulted in a measurable decline in income due to lost productivity. See *Archer v. Untied Rentals, Inc.*, 195 Cal.App.4th 807, 816 (2011) (dismissing plaintiffs' UCL claim because they had not demonstrated how defendant's collection and recording of their personal identification information "translate[d] into a loss of money or property"); cf. *Opperman v. Path, Inc.*, Case No. 13–cv–00453–JST, 2014 WL 1973378, *22 (N.D. Cal. May 14, 2014) (dismissing a claim for lack of Article III standing where plaintiff pled it suffered injury because defendant's alleged "unauthorized transmissions and operations used iDevice resources, battery life, energy and cellular time at a cost to Plaintiffs and caused loss of use and enjoyment of some

---

[34]FAC, ¶ 18.

15

portion of each iDevice's useful life" because "Plaintiffs ha[d] not quantified or otherwise articulated the alleged resource usage, [and] . . . fail[ed] to allege an injury that can serve as the basis of standing").

Absent an explanation as to the types of alleged injury Bontrager suffered caused economic harm, Bontrager's UCL and FAL claims must be dismissed.[35] See *Knippling v. Saxon Mortgage, Inc.*, No. 2:11–cv–03116–JAM–DAD, 2012 WL 1142355, *2 (E.D. Cal. Mar. 22, 2012) ("In this case, Plaintiff has alleged only that she lost time and that Defendant falsely reported mortgage payment deficiencies to her credit bureau. She has not alleged that she lost property or money as a result of defendant's actions. Loss of time is not an economic harm"); *Ruiz v. Gap*, No. 07–5739 SC, 2009 WL 250481, *4 (N.D. Cal. Feb. 3, 2009) ("[I]t is far from clear that the time and expenditure associated with monitoring one's credit is the kind of loss of money or property necessary for standing to assert a claim under section 17200").

**D. Whether Bontrager's Negligent Misrepresentation Claim Must be Dismissed**

Showmark next asserts that Bontrager's negligent misrepresentation claim must be dismissed because a person cannot recover for negligent misrepresentation unless the misrepresentation caused actual damages, and Bontrager has not alleged any damages flowing from his receipt of the email.[36] Bontrager does not respond to these arguments in his opposition.

"The elements of [a claim for] negligent misrepresentation include: (1) misrepresentation

---

[35]The California Supreme Court has noted that "the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact. . . . [I]njury in fact is not a substantial or insurmountable hurdle[.] . . ." Kwikset, 51 Cal.4th at 324. As Bontrager notes, the California legislature has found that "[l]ike junk faxes, spam imposes a cost on users, using up valuable storage space in e-mail inboxes, as well as costly computer band width, and on networks and the computer servers that power them, and discourages people from using e-mail." CAL. BUS. & PROF. CODE § 17529(e). Neither party has adequately briefed whether Bontrager's claimed damages, if they are economic, are sufficiently substantial to support a claim under the UCL or FAL. Absent quantification by Bontrager and absent briefing on the question of their sufficiency, the court declines to determine at this point whether Bontrager's alleged injuries are too small to support claims under the UCL and FAL.

[36]Motion at 11.

16

of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 n. 2 (9th Cir. 2001); see also *Firoozye v. Earthlink Network*, 153 F.Supp.2d 1115, 1128 (N.D. Cal. 2001) ("The elements for a claim for negligent misrepresentation are similar [to the elements for fraud]; the plaintiff must show that the defendant made a misrepresentation without reasonable grounds for believing it to be true and that the representation was intended to induce the plaintiff to take some action in reliance upon it").

A plaintiff must have suffered actual damages to satisfy the final element of a negligent misrepresentation claim; the damages must have been caused by plaintiff's reliance on defendant's alleged misrepresentation. See *Goehring v. Chapman University*, 121 Cal.App.4th 353, 364 (2004) ("The tort of negligent misrepresentation does not require scienter or intent to defraud, but it does, of course, require a showing of resulting damage. . . . [Goehring] produced no evidence to support a finding he suffered damages as a result of relying on those misrepresentations"); *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239 n. 4 (1995) ("[J]ustifiable reliance, and actual damages are [ ] essential elements of negligent misrepresentation"); *Auerbach v. Great Western Bank*, 74 Cal.App.4th 1172, 1184 (1999) ("Deception without resulting loss is not actionable fraud"); *Conrad v. Bank of America*, 45 Cal.App.4th 133, 159 (1996) ("Misrepresentation, even maliciously committed, does not support a cause of action unless the plaintiff suffered consequential damages. And the damages suffered must be referable to, and caused by, the fraud"); *Gray v. Don Miller & Associates, Inc.*, 35 Cal.3d 498, 504 (1984) (reversing an award of "delay damages" for defendant's negligent misrepresentation because plaintiff "was entitled only to [recover] the 'actual losses suffered because of the misrepresentation,'" citing *Gagne v. Bertran*, 43 Cal.2d 481, 490 (1954)); see also CAL. CIV. CODE § 3333 ("[f]or breach of an obligation not arising from contract, the measure of damages except where otherwise expressly provided by this code, is the amount which will compensate for all damages proximately caused thereby, whether it could have been anticipated or not").

Bontrager alleges that he and other putative class members "reviewed, believed, and relied upon the misleading and unsolicited e-mails when deciding to purchase Showmark's services, and how much to pay for the services."[37] He does not allege, however, that he purchased the plaque advertised in the email he received. It seems unlikely that he did, or if so, that he reasonably relied on the misrepresentation in doing so, because he alleges that after he received the email, he investigated whether he had ever received such an award and determined not only that he had not, but also that there was no organization that made such awards. Thus, even if Bontrager's negligent misrepresentation claim is based on allegations that Showmark's email caused him lost time, email storage space, and bandwidth, and even if these damages are not *de minimis*, Bontrager has not adequately alleged how the damages were caused by Showmark's purported misrepresentation. Bontrager cannot have relied on Showmark's misrepresentation to his detriment simply by receiving and reading the email. Detrimental reliance necessarily requires that a plaintiff take certain action or refrain from taking certain action *after* the misrepresentation is communicated. Because Bontrager has not alleged that the email induced him to take or refrain from taking action that resulted in damages, his negligent misrepresentation claim fails, and it must be dismissed.

### III. CONCLUSION

For the reasons stated, Bontrager's first amended complaint is dismissed. His UCL and FAL claims, to the extent he seeks injunctive relief under those statutes, and his claim for negligent misrepresentation are dismissed with leave to amend. The court also dismisses Bontrager's first cause of action under the CEL, his CLRA cause of action, and his prayer for restitution on the UCL and FAL claims. These claims are dismissed with prejudice. Bontrager

---

[37] FAC, ¶ 63.

may amend his complaint to reallege a claim for injunctive relief under the UCL and FAL, and a claim for negligent misrepresentation within twenty (20) days of the date of this order if he can cure the deficiencies the court has noted herein.

DATED: June 20, 2014

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

19